UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-402-RJC-DSC

| | |
|---|---|
| LYDIA A. CHARLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ) | |
| PATRICK R. DONAHOE, ) | |
| Postmaster General, U.S. Postal ) | |
| Service, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Defendant Patrick Donahoe's Motion for Summary Judgment and supporting materials, (Docs. 35-37, 39), Plaintiff's response and surreply (Docs. 39, 41), and Defendant's motion to strike, (Doc. 42). These matters are ripe for review.

## I. BACKGROUND

Plaintiff Lydia Charles, who is proceeding pro se, has been a letter carrier for the US Postal Service for the last eighteen (18) years. Her national origin is "West Indian," and she is currently employed at the Minuet Station in Charlotte, North Carolina.

The following summary is gathered from the collective pleadings, briefs, and voluminous evidentiary record. Plaintiff alleges that she suffered discrimination at the hands of Defendant based on her sex and national origin as well as retaliation for filing a lawsuit for discrimination in 2011. Specifically, evidence suggests Defendant suspended Plaintiff multiple times for irregular attendance, including:

- March 1, 2010: Notice of seven day suspension, (Doc.36-4 at 5-6);
- April 12, 2010: Seven day suspension, (Doc. 36-5 at 1-2);
- May 4, 2010: Fourteen day suspension, (Doc. 36-5 at 1-2);
- May 15, 2010: Seven day suspension, (Doc. 37-1 at 1-3);[1]
- October 28, 2010: Fourteen day suspension, (Doc. 37-1 at 1-3);
- November 17, 2010: Fourteen day suspension, (Doc. 37-1 at 1-3)

Plaintiff filed a discrimination suit against her employers on February 7, 2011.[2] She alleges that, as retaliation for filing such suit, she was prevented from acquiring overtime during 2011, and that she was denied a leave slip in 2011. (Doc. 6: Amended Complaint). Defendant has not objected that Plaintiff has failed to exhaust administrative remedies as it appears that Plaintiff has complied with such requirements.

Defendant forecasts evidence asserting that Plaintiff was habitually late or absent from work without a legitimate excuse.[3] Indeed, Defendant submitted documents from Plaintiff's personnel records attesting that Plaintiff either arrived late or failed to show up for work on almost forty (40) different occasions during 2010 and the first half of 2011.[4] Defendant likewise

---

[1] Neither the April 12, 2010, nor May 15, 2010 suspensions are recorded by discrete notices; instead they are documented within the text of other notices (May 4, 2010 and November 17, 2010, respectively). From the documents, it appears the suspensions were "paper" suspensions, meaning that Plaintiff was still required to show up for work. This may explain why Plaintiff was suspended on May 15, 2010 for attendance infractions during the very period which she was serving her fourteen day suspension beginning on May 4, 2010.

[2] Based on the evidentiary record, the Court believes that Plaintiff claims retaliation based on her filing of a discrimination suit against Defendant. The evidentiary record reflects that Plaintiff filed suit in North Carolina state court, which Defendant promptly removed to federal court in this district on June 8, 2011. The date on the summons from North Carolina state court is not perfectly legible but seems to indicate a filing date of February 7, 2011. On February 10, 2012, Plaintiff's case was dismissed for lack of subject matter jurisdiction as Plaintiff had failed to exhaust her administrative remedies.

[3] Indeed, both Plaintiff and Defendant have submitted, and the Court has reviewed, vast amounts of documents—collectively almost a thousand pages.

[4] The evidence forecast by Defendants suggests that Plaintiff was either absent or tardy on the following dates: January 4, 2010; January 12, 2010; January 16, 2010; January 20, 2010; January 23, 2010; February 2, 2010; February 3, 2010; February 10, 2010; February 17, 2010; February 20, 2010; February 21, 2010; February 22, 2010; February 23, 2010; February 26, 2010; March 2, 2010; March 11, 2010; March 18, 2010; April 6, 2010; April 8,

submitted testimony from Plaintiff's supervisor, Jamison Pawl, contending that Plaintiff had not been treated differently than other employees who committed attendance infractions, and that any differences resulted from the fact that Plaintiff's attendance violations were more egregious than the other employees. (Doc. 36-2 at 31). Defendant claims that any adverse actions that Plaintiff faced at work were appropriate in light of Plaintiff's chronic tardiness.

Plaintiff, in turn, maintains that there have been mitigating circumstances beyond her control which must be considered in evaluating her claim. Specifically, Plaintiff claims that a major surgery in June 2010 left her in "debilitating and excruciating pain." (Doc. 38 at 1). This notwithstanding, Plaintiff "did not renew [her] FMLA Certification after surgery because [she] was in the hopes that there would no longer be any need for it. However, [she] did provide management with proper medical documentation for any absences that were incurred." (Id.). Eventually, on February 24, 2011, an Arbitrator found that Defendant had improperly denied Plaintiff's request for sick leave under the Family Medical Leave Act (FMLA). (Doc. 38: Counselor's Report at 67-68).

The crux of Plaintiff's claim is that Defendant enforced the attendance policy in a discriminatory manner due to her status as female of West Indian national origin. (Doc. 38 at 2). She claims that Defendants have singled her out and "tracked and monitored [her] so intently in order to issue disciplinary actions" against her. (Id. at 3). Plaintiff contends that she was treated differently than fifteen (15) other employees of African-American or Caucasian heritage who also incurred attendance infractions, but whose punishments were not as severe. (Id.).

---

2010; April 13, 2010; April 16, 2010; August 2, 2010; August 31, 2010; September 13, 2010; September 27, 2010; October 15, 2010; October 19, 2010; October 20, 2010; October 21, 2010; November 1, 2010; December 2, 2010; December 3, 2010; December 16, 2010; January 11, 2011; February 14, 2011; March 30, 2011; March 31, 2011; April 11, 2011; April 19, 2011. (Docs. 36-1 at 305; Doc. 36-2 at 329-30; Doc. 36-3 at 767-72).

Additionally, the majority of the employees who received lenient treatment for attendance infractions were male. (Id.).

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the moving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

## III. DISCUSSION

### A. Motion to Strike

Defendant has moved to strike various materials submitted by Plaintiff, including: Plaintiff's Surreply brief, attached exhibit, and a variety of other exhibits submitted to Plaintiff's brief in response to Summary Judgment. The Court overrules Defendant's objection. The majority of these documents would be admissible but for the failure of a pro se Plaintiff to authenticate them properly. Likewise, objections to hearsay could conceivably be overcome by calling the relevant person as a witness to testify to the discrete facts contained in the documents. These failures derive, in greater measure, from Plaintiff's limited knowledge of the Federal Rules of Evidence than from the intrinsic nature of the evidence. Finally, the majority of exhibits are wholly duplicative of materials submitted elsewhere into the evidentiary record by Plaintiff. For these reasons, the Court overrules Defendant's objection and **denies** Defendant's Motion to Strike Surreply (Doc. 42).

5

B.      Disparate Treatment

To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that she is a member of the class protected by Title VII, (2) that the prohibited conduct in which she was engaged was comparable in seriousness to misconduct of employees outside of the protected class, and (3) that the disciplinary measures enforced against her were more severe than those enforced against other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). If the Plaintiff succeeds in proving her prima facie case, the burden shifts to the Defendant to articulate a non-discriminatory reason for the difference in disciplinary enforcement. Id. If the employer articulates such non-discriminatory reason, the burden shifts back to the Plaintiff to demonstrate that the employer's reasons are merely a pretext for discrimination. Id.

Plaintiff has provided at least the minimum of evidence to establish a prima facie case. She is a female of West Indian national origin, she was not the only employee in her group to commit attendance infractions, and the sheer frequency of suspensions at least suggests that she was treated more severely than other employees in her group. Plaintiff included testimony from Loran Fraley, the shop steward and representative from Plaintiff's union, attesting that she believed Plaintiff had received disparate treatment to other employees with "similar tardy or unscheduled attendance infraction; and thus, not for just cause." (Doc. 40-1 at 6-7).[5]

Plaintiff's supervisor, Jamison Pawl, denied selecting Plaintiff for discipline in a discriminatory manner. Testifying at the arbitration hearing, Pawl stated that he repeatedly counseled Plaintiff about her attendance. (Id. at 3). He "explained that there are other

---

[5] The Court has overruled Defendant's motion to strike this document, which is contained elsewhere in the record (e.g. Doc. 6-12 at 1-17). For ease of citation, the Court cites to this submission.

employees at various step[s] of progressive discipline based upon their own attendance related infractions. (Id. at 4). However, there were no other carriers (comparable employees) who had "tardy problems comparable to [Plaintiff]." (Id.). Likewise, Britton McGill, the manager of the Annex where Plaintiff works, testified that the disciplinary measures, specifically, the Notice of Removal, were appropriate based on Plaintiff's incidents of attendance problems. (Id. at 6)

Here, taken in its entirety, the evidentiary record reflects conclusively that Plaintiff suffered repeated attendance infractions over an extended period of time and that the relative severity of the disciplinary measures taken by Defendant were attributable to the persistent nature of Plaintiff's attendance infractions. Likewise, the evidence submitted by Defendants establish that, while other employees engaged in a variety of attendance infractions, Plaintiff's violations were unique in frequency. Based on the full range of evidence submitted, Defendant meets its burden in establishing a legitimate, non-discriminatory reason for the disciplinary measures against Plaintiff.

A plaintiff can show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S 248, 256 (1981). Plaintiff's claim fails as she provides no evidence to persuade the Court that Defendant's treatment of her bore any relation to discrimination on account of her national origin or gender. Defendant may have been heavy-handed in doling out suspensions and other forms of discipline, but the evidence is unequivocal that such measures were directly related to Plaintiff's frequent absences and late arrivals. Absent any indication that such measures were "pretextual," Plaintiff's claim fails. For this reason, the Court **grants** Summary Judgment for

Defendant on Plaintiff's discrimination claim.

C. Retaliation

Retaliation also involves a burden shifting framework. Plaintiff must first establish a prima facie case by demonstrating that: (1) she was engaged in protected activity; (2) the employer acted adversely against her; and, (3) the protected activity was causally connected to the employer's adverse action. Beall v. Abbot Laboratories, 130 F.3d 614, 619 (4th Cir. 1997). If the Plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Id. If so demonstrated, the burden shifts back to the Plaintiff to demonstrate that the employer's reason was "a mere pretext for retaliation" by proving "both that the reason was false, and that discrimination was the real reason for the challenged conduct." Id. (citations and emphasis omitted).

It appears that Plaintiff alleges that the Defendant denied her certain benefits (overtime and leave) and enforced the attendance policy arbitrarily against her as a direct result of her filing a civil rights claim in federal court in 2010. The Court finds that Plaintiff established the first two elements of her prima facie case. Plaintiff's claim fails, however, as she failed to provide any account of a causal connection between of the EEOC complaint and the adverse action. Plaintiff never explains or identifies any discrete evidence to support a finding that Defendant's engaged in any discrete actions as a result of her filing of a suit against them.

Finally, even assuming that Plaintiff could prove her prima facie case, Defendant has provided ample evidence to establish legitimate grounds for denying Plaintiff's leave requests. Notably, Plaintiff's attendance infractions—and Defendants disciplinary measures—pre-dated Plaintiff's civil suit and cannot be deemed as retaliatory. The evidentiary record demonstrates

8

that Plaintiff's leave was denied for reasons unrelated to the filing of Plaintiff's civil suit; instead, Plaintiff's leave was denied due to the personnel needs at that time. For this reason, Plaintiff cannot establish a case for retaliation and the Court **grants** Defendant summary judgment on this claim.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. 35), is **GRANTED**;

2. Defendant's Motion to Strike, (Doc. 42), is **DENIED**; and

3. The Clerk of Court is directed to close this case.

Signed: September 29, 2014

Robert J. Conrad, Jr.
United States District Judge